## SWAINE against PERINE.

Though a widow's remedy for dower, is, *prima facie*, at law; yet, where the title is admitted, but impediments are thrown in the way of her proceeding at law, this Court will sustain a bill, filed by her, for her dower.

An antenuptial agreement, that the intended wife shall exclusively enjoy property, held by her as widow and administratrix of her former husband, and which is not expressed to be in lieu of dower, is no bar to her claim for dower in the estate of her second husband.

A deed given by a husband just before his marriage, to his daughter, without any consideration, and kept secret until after the marriage, is fraudulent and void, as against the wife's claim to dower.

A conveyance of land by the husband, during coverture, in trust for his wife, to whom the trustee afterwards conveys it, but which was not intended or accepted in lieu of her dower, is no bar to her claim of dower, after his death.

A release by the husband of his equity of redemption in lands mortgaged, not executed by the wife, though she joined in the mortgage, is no bar to her claim of dower in the equity of redemption, or remaining interest of the husband in the land, after satisfaction of the mortgage.

She is, however, bound to contribute rateably to the redemption of the mortgage.

And where the heir has redeemed the land, by paying off the mortgage, and the widow files her bill against him for dower, the mode in which she is to contribute, is, by paying, during her life, to the heir, one third of the interest on the amount paid by him, to be computed from the time of such payment, or the value of such annuity, according to the circumstances, to be computed by a master.

And the husband being considered as having died seized of the land, subject to the mortgage, the widow is entitled to one third of the rents and profits from the time of his death.

*June 7th, and August 13th.*

THE plaintiff, *Dorothy Swaine*, on the 1st of *October*, 1819, filed her bill, stating, that she is the widow of *Simon Swaine*, who died, seised and possessed of a dwelling house, farm, &c. on the 31st of *March*, 1816, intestate,

leaving the defendant, Catharine Perine, his only child and heir at law. That being entitled, as she was advised, to one third part of the premises, of which her husband so died seised, situate in Southfield, in the county of Richmond, during her life, she, on the 13th of December, 1816, demanded of the defendant to assign to her, the plaintiff, her dower in the premises, which were particularly described in the bill. That the defendant, since the death of S. S., as his heir, has possessed herself of all the title deeds to his said property, and holds and occupies the premises, to the entire exclusion of the plaintiff, and refuses to assign to her her dower therein. The bill prayed, that the defendant might be decreed to assign to the plaintiff, the one third part of the premises, as for her dower, and for general relief.

The defendant, in her answer, (filed December 23, 1819,) admitted the marriage of the plaintiff, as stated, with S. S., and that he was in possession of the premises, but denied that she had any title deeds. That S. S. continued in possession of a part of the dwelling house, until his death ; but that, as she is advised and believed, he was not at the time of his marriage, nor at any time during the coverture, so seised as to entitle the plaintiff to dower. The defendant stated, that the plaintiff lived on the premises with S. S. at the time of his decease, and has ever since resided thereon : but that a greater part of the premises were in the possession of the defendant's son, as her tenant, before, and at the time of the death of S. S., and which the defendant held in absolute right, by virtue of a conveyance to her by S. S., before his marriage with the plaintiff. That the plaintiff, at the time of her marriage with S. S., owned considerable real and personal property ; and before, and in contemplation of marriage, it was agreed between her and S. S., that she should enjoy her said estate during coverture, to her sole and separate use. That S. S. having

so agreed with the plaintiff, by an instrument, executed the 12th of *November*, 1794, in consequence thereof, the defendant being his only child, in order to make provision for her, did, on the 14th of *November*, 1795, execute a conveyance to her, her heirs and assigns, of the farm and premises, in which the plaintiff now demands dower, with full covenants against incumbrances, &c., which deed was duly acknowledged and in full force, before the marriage of the plaintiff with *S. S.* ; and the defendant, by her son and tenant, was in the actual possession of the farm and premises, (except a small part of the dwelling house and a burial place,) before, and at the time of the death of *S. S.* That *S. S.*, in his life time, for the nominal consideration of 500 dollars, conveyed eleven acres of woodland to *John Dunn*, who executed a declaration in trust in favour of the plaintiff, and after the death of *S. S.*, *Dunn* conveyed the eleven acres of land to the plaintiff, in execution of the trust. That *S. S.*, and the plaintiff, his wife, executed a mortgage of the premises in which she now claims dower, to *J. D.*, to secure the payment of 1,000 dollars ; which mortgage was outstanding at the time of the death of *S. S.* That *S. S.*, with the privity and consent of the plaintiff, on the 8th of *August*, 1815, released the *equity of redemption* in the mortgaged premises to *J. D.*, so that *S. S.* did not, in any manner, die seised of the premises. The defendant submitted, that if the plaintiff is entitled to dower, it can only be upon the payment of one third of the principal, interest and costs due on the mortgage, which the defendant, by a decree of this Court, on a bill filed by her and her son, was allowed to redeem. The defendant admitted, that she and her son were in possession of the premises, except part of the dwelling house, occupied by the plaintiff ; and she denied that she ever refused to assign dower to the plaintiff, who had never demanded an assignment of it.

On the 4th of *February*, 1820, the defendant filed a *cross bill* for a discovery, and copies of the several deeds, and in-

struments in writing, alleged to be in the possession of the plaintiff. The plaintiff, in her answer to the *cross bill*, filed on the 20th of *October*, 1820, denied that she had any real or personal estate, at the time of her marriage with the intestate, except as widow and administratrix of her first husband, *Charles Garrison*, being her dower in about twelve acres of land, and personal property, in her possession, as administratrix, specified in a schedule annexed to the antenuptial agreement mentioned in the bill, copies of which were set forth. She alleged, that this agreement was not in lieu of dower, but merely as an inducement to the marriage. She admitted the deed from *S. S.* to the plaintiff, but alleged that it was kept secret until after the marriage; and on a bill, filed by the defendant and her son against *Dunn*, was decreed to be fraudulent. She admitted the conveyance of the eleven acres of land to *Dunn*, and the declaration of trust. She stated, that the consideration, as respected *Dunn*, was nominal, but that the conveyance was made to compensate her for advances made by her to *S. S.*, during her coverture, which exceeded the sum of five hundred dollars, and that the eleven acres were not worth that sum. She admitted that *S. S.* died in debt, that she administered on his estate, and that the personal estate was not sufficient to pay his debts; that the bond and mortgage given to *D.* was to raise money to defray the expenses of suits brought by the plaintiff and her husband, in his life time, and the mortgage is still outstanding. She admitted, that *S. S.* executed a release of the equity of redemption to *D.*, in the execution of which she acquiesced, for the purpose of providing for the payment of debts; but she alleged, that *D.* never, in fact, paid the consideration money, and that he afterwards delivered up the deed, as being of no effect. She admitted the payments, stated in the cross bill, on the mortgage, and prayed the benefit of the evidence taken in the suit, by the defendant *P.* and her son, against *Dunn*. She de-

1821.

SWAINE
*v.*
PERINE.

nied that the title deeds were in her possession, and any knowledge of them.

*John Dunn*, who was examined as a witness, proved the demand of dower by the plaintiff, and the defendant's refusal. He stated, that the conveyance of the eleven acres to the plaintiff, was in consideration of advances made by her, from time to time, to *S. S.*, out of the moneys belonging to her, as administratrix of *C. G.*, her former husband ; and that they were not the proper moneys of *S. S.* That the witness received the release of the equity of redemption from *S. S.*, and it was a short time in his possession, when he put it into the hands of his attorney, in a suit against *S. S.*, for the purpose of having it done away. That he never paid any consideration for the release, and never relied upon it as a valid instrument ; but his attorney produced it to the defendant's solicitor, to induce him to agree to a settlement. His testimony was confirmed by that of his attorney. It was proved, that after the death of *S. S.*, *Dunn* proceeded to foreclose the mortgage.

*June* 7th. The cause came on to be heard on the pleadings and proofs.

*Wallis*, for the plaintiff. He cited 6 *Johns. Rep.* 290.

*H. W. Warner*, contra, contended : 1. That the plaintiff's claim to dower could not be supported in equity. She had the benefit of the ante-nuptial agreement, and of the eleven acres of woodland ; amounting in value to more than one third of the premises.

2. That by joining her husband in the mortgage to *Dunn*, the plaintiff parted with her right of dower ; her legal right was barred ; and she was not entitled to be endowed in an equity of redemption. (2 *Powell on Mortg. ch.* 16. p. 701, 702, 703, and 704. 8 *Tyng's Mass. Rep.* 491. 9 *Tyng's Rep.* 161. 218. 7 *Tyng's Rep.* 14.) In the cases of *Hitchcock* v. *Harrington*, (6 *Johns. Rep.* 290.) and

of *Collins* v. *Torry*, (7 *Johns. Rep.* 278.) the wife did not join in the mortgage. So, in *Coles* v. *Coles*, (15 *Johns. Rep.* 319.) it was merely decided, that where a person seised in fee, mortgages the land, and afterwards marries and dies, his widow is entitled to dower in the equity of redemption. There is no case in which it has been decided, that a wife who has executed the mortgage, and thereby released every thing in her power, was entitled to dower. The observation of the Chancellor, in *Tabele* v. *Tabele*, (1 *Johns. Ch. Rep.* 45, 46.) is a dictum, obviously founded on the cases in the 6th and 7th *Johns. Rep.* before cited.

3. The release of the equity of redemption, given to *Dunn*, by the plaintiff's husband, and with her assent, extinguishes all claim in equity. The release was delivered to *D.*, and was used, in one instance, as a muniment of title. The plaintiff cannot set aside that release. It is conclusive here.

5. The defendant has paid debts to the amount of 400 dollars, and the mortgage was a debt. The conveyance of the eleven acres, being *voluntary*, was void, as against creditors.

*August* 13th. The cause stood over for consideration until this day.

THE CHANCELLOR. This is a bill for dower; and the bill charges, that the defendant is the only child and heir at law of *Simon Swaine*, her late husband, and that she has possession of the title deeds, and refuses to assign dower. The jurisdiction of the Court is not questioned by the defendant; and that jurisdiction appears to be well established, in cases where no legal bar or impediment is raised to the title. The practice is to decree the dower to be set out by the master, as was done in the case of *Goodenough* v. *Goodenough*, (*Dickens*, 795.) or to grant a commission to assign dower, as was mentioned in *Curtis* v. *Curtis*, (2 *Bro.* 620.)

SWAINE
v.
PERINE.

Though        a
widow's  reme-
dy for dower, is,
prima  facie,  at
law ; yet where
the  title  is  ad-
mitted, but im-
pediments    are
thrown  in  the
way  of her pro-
ceeding at law,
this Court  may
assume    juris-
diction,      and
give  her  relief
for her dower.

In the case last mentioned, the subject was very fully discussed, and the cases touching the jurisdiction of the Court, reviewed by the *Master of the Rolls.* He admitted, that the widow's remedy was, *prima facie,* at law, and the dower was a mere legal demand, but that on the allegation of impediments thrown in the way of her proceeding at law, this Court can assume jurisdiction, and give her relief for her dower. To say, that the widow should have no damages when her dower was assigned to her in Chancery, was a proposition not supported by Lord *Coke,* in *Co. Litt.* 33. *a.* for he was there speaking of the writ *de dote assign-* *anda,* and not of a decree of a Court of Equity. On that writ from Chancery, there are no damages, because there is no deforcement of the widow. This Court has juris- diction, and will relieve the widow as it relieves an infant. If she comes here for a discovery of the title deeds in the hands of the heir, she is to have her complete relief in this Court. If you deny her right to dower, the *Master of the Rolls* said, in the case cited, the question must be tried at law ; but when the fact is ascertained, she shall have her relief in equity. The course of the Court has been to assign her dower, and, universally, to give her an ac- count of the mesne profits, from the death of her husband.

The same question of jurisdiction was examined, in *Mundy* v. *Mundy,* (4 *Bro.* 295. 2 *Vesey,* jun. 122.) and the authority and settled practice of the Court, and the utility and convenience of that practice, clearly asserted, and ably vindicated, by Lord *Loughborough.* That was the case of a bill for dower, and for an account of the mesne profits from the death of the husband. There was a demurrer put in, on the ground, that the widow's remedy was at law. The Chancellor asserted a concurrent juris- diction, though there was no difficulty in the way at law, and that writs of dower had almost gone out of practice, for there was intricacy and difficulty, and no costs in the remedy by writ, at law. If the legal title to dower was

controverted, it must be made out at law, but where there was no dispute of that kind, there was no need of sending the party to law.

But the defendant has not interposed any demurrer in this case. She has submitted to this Court her objections to the right of the plaintiff, and they have been discussed by counsel, as properly cognizable in this Court. I shall, therefore, proceed to the merits of the defence set up by the defendant, who is the heir at law.

The marriage, seisin, and death of the husband, are admitted; but it is objected:

1. That there was an ante-nuptial agreement made, on the day of the marriage, between the husband and wife, by which she was to enjoy exclusively, for her own benefit, some real and personal estate. She says, that the real estate consisted only of her right of dower as the widow of a former husband, in twelve acres of land, and that the personal estate is about 950 dollars, which she held as administratrix of her former husband. There is nothing to gainsay her answer to the cross bill on this point; and this agreement was not stated to be in lieu of dower in the lands of her second husband, S. *Swaine*; and there is no colour for the suggestion, that this agreement formed any impediment to her present claim.

An ante-nuptial agreement, by which the intended wife was to enjoy exclusively, property derived as the widow of her former husband, and which was not expressed to be in lieu of dower, is no bar to a claim of dower in the lands of the second husband.

2. The deed from *Swaine*, to his daughter, the defendant, dated the 14th of *November*, 1794, and on the day of the marriage, is also set up to show, that the husband was not seised of the premises, during the coverture. But by an order made during the progress of this cause, the testimony taken in the cause of *Catharine and Simon Swaine, jun. against John Dunn*, in which the validity of that deed was put in issue, is admitted to be read in this cause; and upon that testimony, it has been already decided, (*Perine v. Dunn*, 3 *Johns. Ch. Rep.* 508.) that the deed was fraudulent and void, as against *Dunn*, a subsequent mortgagee.

A deed given by a husband, just before marriage, to his daughter, without any consideration, and kept secret until after the marriage, was held to be fraudulent as against the wife's claim to dower.

1821.

SWAINE
v.
PERINE.

As it was fraudulent in fact, and kept concealed, and possession never went along with it, and as it was given without consideration, the deed is equally to be adjudged fraudulent as against the plaintiff.

A conveyance of land by the husband during coverture, in trust for his wife, not intended or accepted in lieu of dower, is no bar to her claim of dower on his death.

3. The conveyance by the husband, during coverture, of eleven acres of woodland, to *John Dunn*, in trust for the plaintiff, and which trust was afterwards executed by *Dunn*, is also set up by the defendant, as an equitable bar of the plaintiff's right of dower. But it is sufficiently proved, that the deed to *Dunn*, in trust for the plaintiff, was given for advances made by her during coverture, to and for the use of her husband, and that those advances were actually made by her out of moneys belonging to her, as administratrix of her first husband, to an extent much beyond the value of eleven acres. This objection to this claim is equally destitute of any foundation. The conveyance of the eleven acres, even if voluntary, would have been no bar of dower, for it was never intended to be made or accepted upon any such condition, but it appears to have been made upon a fair and valuable consideration.

A release by the husband of his equity of redemption, not executed by the wife, is no bar to her claim of dower.

4. Another objection, which seemed to be much more relied on, was the release by *S. Swaine*, the husband, of his equity of redemption in the premises to *John Dunn*, after having mortgaged the same to him for 1,000 dollars. But the answer to this objection is, that the plaintiff was no party to that release, and her right of dower in the equity of redemption could not, therefore, be affected by it. In the next place, it may be observed, that the release itself was without consideration, and was never accepted by *Dunn*, though he had it, for a few weeks, in his possession. It was a voluntary act of *Swaine*, without any consultation or contract with *Dunn;* and the latter took it, not as an absolute and valid release, but rather as a trustee for *Swaine*, who was then languishing with disease. *Dunn* never acted under it, or treated it as a valid conveyance ; but he proceeded,

after the death of *Swaine*, to foreclose his mortgage under the power contained in it; and in the bill filed by the defendant as heir, to redeem the mortgage, the release was not set up by *Dunn*, as a bar to the redemption. The defendant was, by the decree of this Court in the cause already referred to, allowed to redeem, and she has actually redeemed the land in which dower is now sought, from the incumbrance of that mortgage. In every view of the subject, this release is no obstacle to the claim of dower.

1821.

SWAINE
v.
PERINE.

5. The only part of the defence, that has solidity in it, is the claim by the defendant, upon the plaintiff, to contribute proportionably, as dowress, to the redemption of the mortgage; and it appears to me, that her pretension here is well founded.

*A feme covert, who has joined her husband in a mortgage of land of which he was seised, is, nevertheless, entitled to dower in the equity of redemption; subject, however, to a rateable contribution, as dowress, for the redemption of the mortgage.*

The plaintiff was a party to the mortgage to *Dunn*, and her claim to dower was only in the equity of redemption, or the interest which her husband had *remaining* in the land, after satisfaction of the mortgage. Her right of dower was subject to the mortgage; and if the heir has been obliged to redeem the land, by paying that mortgage *to which the plaintiff was a party*, she ought, in justice and equity, to contribute her rateable proportion of the monies paid towards redeeming the mortgage. The redemption was for her benefit, so far as respected her dower. To allow her the dower in the land without contribution, would be to give her the same right, that she would have been entitled to, if there had been no mortgage, or as if she had not duly joined in it. It would be to give her dower in the whole absolute interest and estate in the land, when she was entitled to dower only in a part of that interest and estate. In *Palmer* v. *Danby*, (*Prec. in Ch.* 137.) the Lord Keeper allowed a dowress to redeem a mortgage on land, which had descended to an infant, subject to incumbrances, by paying her proportion of the mortgage money, and to *hold over for the rest*. By this case, I understand

her *proportion* of the debt was to be borne by her dower interest, and that she was to hold the land in the character of an assignee of the mortgage, 'until she was reimbursed as to the residue of the mortgage debt.

In *Banks* v. *Sutton*, (2 P. *Wm* 700.) Sir *Joseph Jekyll* gave to the widow her dower, in the equity of redemption, of a mortgage in fee ; and though the case has since been overruled, in respect to her title in such a case, yet if she be entitled, the terms of the decree were, no doubt, just, and ought to be regarded as authority. In that case, the Master of the Rolls decreed to her the arrears of her dower from the death of her husband ; and she was to allow, or keep down, *the one third of the interest of the mortgage money, unsatisfied at that time.* The bill in that case was, to redeem the mortgage, given by the person from whom her husband derived title ; and in her bill, she offered to pay, or keep down, the one third of the interest of the mortgage money, remaining unsatisfied.

This case refers to *the death of the husband,* as the time from which the amount, to which the widow is to contribute, is to be deduced ; and, as far as the husband had reduced the mortgage debt in his life time, that was doubtless so far a redemption for the benefit of the wife, as well as himself. She is only to contribute, to relieve the land of the incumbrances, to the extent in which it existed when the husband died.

And she is, also, entitled to an account of the mesne profits, from the time of the death of her husband ; who is considered as having died seised of the land, subject to the mortgage.

I shall, therefore, decree, that the plaintiff is entitled to her dower in the ninety acres, and to an account of the mesne profits, from the death of the husband. The husband, in this case, is to be considered as having died seised of the equity of redemption, or of the real estate, subject to the mortgage ; and in such cases, it appears, by the cases already cited, and by that of *Oliver* v. *Richardson,* (9 *Vesey*, 222.) to be the settled course, to compute the rents and profits from the husband's death. But as the plaintiff has been and still is in possession of a proportionate part of

the dwelling house on the premises, the account of the mesne profits ought to be confined to the farm, exclusive of the dwelling house, and which ought not to enter into the computation. She will be entitled to one third part of these mesne profits, when ascertained, and to one third part of the dwelling house and land, after deducting her rateable contribution towards the redemption of the mortgage.

The next question is, how is the plaintiff to contribute rateably to discharge the mortgage debt. If she was to pay one third of the debt and interest (exclusively of costs) paid by the defendant, together with interest on that one third, from the time ·the defendant paid it, there could be no doubt that this would be to the defendant a satisfactory contribution. But the plaintiff has only a life interest in the dower, and payment of the entire one third of that debt would be unjust. It would be making her pay for a life estate, equally as if it was an estate in fee. The more accurate rule would appear to be, that she should "keep down" one third of the interest of the mortgage debt, by paying, during her life, to the defendant, the interest of one third part of the aggregate amount of the principal and interest of the mortgage debt, paid by the defendant, to be computed from the date of such payment. But as it would be inconvenient and embarrassing to charge her with such an annuity, then let the value of such annuity from the plaintiff, (her age and health considered,) be ascertained by one of the masters of this Court, and be deducted from the amount of the rents and profits so coming to her; and if that value should exceed the the amount of the rents and profits so coming to her, that then, the residue of such value be deducted from the dower to be assigned to her, out of the house and land mentioned in the bill. The question is, if an estate in fee, in one equal third part of the premises, ought to pay the one equal third part of

*Where the heir has redeemed the land by paying off the mortgage. and the widow files her bill against him for her dower, the mode in which she is to contribute, is by paying, during her life, to the heir, the one third of the interest on the amount paid by the heir, from the time of such payment, or the value of such annuity, to be computed by a master.*

1821.

SWAINE
v.
PERINE.

the mortgage debt and interest, paid by the defendant, then what proportion ought the plaintiff's life estate, in that one third part, to pay? I apprehend the value of such an *annuity, would* be that result.

No costs allowed to either party.

I shall not charge the defendant with costs in this suit. The plaintiff claimed her dower, without offering or consenting to contribute to the discharge of the mortgage. Both parties have set up pretensions, that were not well founded, and it would be just, that each party should pay her own costs. At law, on a writ of right of dower, or on an assignment of dower, no costs are given, unless there be a deforcement, when the statute of *Gloucester* (which we have re-enacted) gave damages. But Lord *Thurlow* said, in *Lucas* v. *Calcroft*, (1 *Bro.* 134.) that in cases where there was an apportionment of dower by commissioners, and not by writ, costs were not given, unless the party was vexatious. And in *Curtis* v. *Curtis*, (*ubi supra*,) the Master of the Rolls held, that the widow had no costs where the heir threw no difficulties in the way. The right to costs must rest here, as in almost all other cases in this Court, on sound discretion.

Decree.

The following decree was entered: "*It is declared*, that the plaintiff is entitled to her dower in the messuage, dwelling house and land, in the bill mentioned, being ninety and an half acres; and she is entitled also, to one third part of the mesne profits of the premises, accrued since the death of her husband; and that her right is subject to a just and rateable contribution towards payment of the mortgage debt, in the pleadings mentioned. It is, thereupon, *ordered, &c.* that it be referred to one of the masters of this Court, to take an account of the rents and profits, (exclusive of the dwelling house, of which a proportionate part has been occupied by the plaintiff,) accrued since the husband's death, down to the date of the report, and which have been received by the defendant, or by any other person by her order, or for

her use, or which might have been received with ordinary care and diligence, and one third part of what shall be coming on said account of rents and profits, is to be paid by the defendant to the plaintiff, under the proviso and subject to the deduction of the value of the annuity herein after mentioned. That for the better taking the said account, the defendant is to produce before the master, upon oath, all deeds, writings, papers and books of account in her custody, or power, relating to the matters in question, and both parties are to be examined, as the master may direct; and the master is to make to both parties all just allowances: *And it is further ordered, &c.*, that the master ascertain the amount of principal and interest, (exclusive of costs,) due upon the mortgage, in the pleadings mentioned, and paid by the defendant, upon the redemption thereof, and the time when paid, and the amount of a year's interest on the aggregate sum of one third part of such principal and interest so paid by the defendant; and what would be the value, in a gross sum, upon the calculation of life annuities, and duly considering the age and health of the plaintiff, of such yearly interest, payable yearly, from the time of such payment, during the life of the plaintiff; and that the amount of such value, in a gross sum, be deducted from the amount of the one third part of the rents and profits to be ascertained, as belonging to the plaintiff as aforesaid; and if such value should equal the amount of the one third part of the said rents and profits, that in such case the one be set off against the other. But if such value should exceed the one third part of the rents and profits, then the excess be by the master deducted from the amount or value of the dower to be assigned, and that so much of the premises, as such excess shall, in the judgment of the master, amount to, (the land to be estimated according to its worth to the plaintiff, having a life estate therein,) be deducted from the one third part of the premises to be as-

signed to the plaintiff : *And it is further ordered,* that the master assign to the plaintiff, by metes and bounds, her dower in the messuage or dwelling house, and ninety and an half acres of land aforesaid, after having deducted as aforesaid, from the quantity of land so to be assigned, as much as shall, in his judgment, be sufficient to satisfy the defendant what may remain due to her upon the value of the said annuity, after the one third of the rents and profits shall have been deducted as aforesaid : *And it is further ordered,* that no costs be recovered by either party, as against the other, and that the master be at liberty to apply for further directions, if necessary, upon the foot of this decree : *And it is further ordered,* that the defendant deliver possession to the plaintiff, of the lands and tenements, and of the part of the dwelling house, and messuage, with its appurtenances, which shall be so set out and assigned to the plaintiff for her dower ; and that the tenants, if any, on the premises so to be assigned, attorn to and pay their rents to the plaintiff."